**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA,

v.                                                    Case No. 3:22-cr-154-LAB-MCR

JOHN M. WILLIAMS,

_____

## O R D E R   O N   P E N D I N G   M O T I O N S

On August 22, 2023, the Court held a Status Conference via Zoom to address pre-trial matters and the status of pending motions. (Doc. 42, 52, 53, 54, 55, 60). The pending motions were submitted on the papers and having reviewed the briefing and relevant law, the Court rules as detailed below. The Court reserved **September 18, 2023, at 3:00 p.m.** for a Zoom hearing if either party wishes to make additional oral argument after reviewing this Order. If counsel for either party seeks oral argument, counsel must file a notice of the request on the docket no later than September 11, 2023. If neither party requests oral argument by that date, the Court will vacate the reserved hearing date.

## I.     MOTION TO PRODUCE HANDWRITTEN NOTES (Doc. 42)

Defendant John M. Williams firsts moves for production of handwritten notes taken by IRS agents during **third-party witness interviews**, which were subsequently relied on to prepare Memoranda of Interviews. (Doc. 42 at 1).

He seeks handwritten notes regarding all witness statements, (*id.* at 1, 5), under the Jencks Act, 18 U.S.C. § 3500; Federal Rule of Criminal Procedure 16(a)(1)(B); *Brady v. Maryland*, 373 U.S. 83 (1963); and *United States v. Giglio*, 405 U.S. 150 (1972). The Government opposes the motion. (Doc. 44). The Court **DENIES** Williams's motion.

First, the notes sought don't contain any statements by Williams and, therefore, aren't discoverable under Federal Rule of Criminal Procedure 16(a)(1)(B). Rule 16(a)(1)(B) requires the government to produce, on the defendant's request, certain materials related to statements **made by the defendant**. Williams's reliance on *United States v. Nelson*, No. 3:10-cr-23-J-32TM, 2010 WL 4639236 (M.D. Fla. Nov. 8, 2010), is inapposite. In that case, the court ordered the production of portions of notes taken during the *defendants'* pre-indictment interviews with government agents. *Id.* at *5. Here, in contrast, Williams is seeking notes taken during interviews with third-party witnesses (Williams himself wasn't interviewed). Neither *Nelson* nor Rule 16(a)(1)(B) requires production of handwritten notes taken during interviews with third-party witnesses.

Second, the Court has ordered the Government to comply with its obligations under *Brady*, 373 U.S. 83, and *Giglio*, 405 U.S. 150, (Doc. 6, 16), and the Government represents it has complied and will continue to comply with

that order. (Doc. 44 at 10). Williams's motion doesn't challenge the reliability of the Government's *Brady* and *Giglio* representations.

Third, handwritten notes aren't statements of a government witness under the Jencks Act. "The Jencks Act, 18 U.S.C. § 3500, requires the government to produce, on motion by the defendant, any statement of a government witness which relates to the subject matter of the witness's testimony." *United States v. Soto*, 711 F.2d 1558, 1561 (11th Cir. 1983) (footnote omitted). Jencks Act statements include any "written statement made by said witness and signed or otherwise adopted or approved by him." 18 U.S.C. § 3500(e)(1). Under Eleventh Circuit precedent, handwritten interview notes taken by a government agent aren't automatically considered statements of either the witness or the agent under the Jencks Act. Nor do handwritten notes become Jencks statements simply because they are used to prepare a final report. *See Soto*, 711 F.2d at 1562–63 (collecting cases).

Handwritten notes may constitute a Jencks Act statement *of the interviewee* if they contain "substantially verbatim recital[s] of [] oral statement[s] made by [a government] witness." 18 U.S.C. § 3500(e)(2); *see also United States v. Cruz*, 478 F.2d 408, 412–13 (5th Cir. 1973) (noting: (1) "substantially verbatim recitals of oral statements" made by government witnesses are required to be produced under the Jencks Act; and (2) whether notes contain such statements is a matter of fact appropriately decided by the

3

trial court).[1] If Williams has reason to believe that the agents' reports are incomplete or that the handwritten notes contain substantially verbatim recitals of a third-party witness that aren't accurately reflected in the agents' reports, upon Williams's request the Court will review, in camera and before trial, the notes taken during the interview of any witness the Government intends to call at trial to determine whether they should be produced. *See Palermo v. United States*, 360 U.S. 343, 354 (1959) (approving of in camera review to determine whether a statement must be produced under the Jencks Act). The Jencks Act requires production of any covered statement only after a witness has testified. *See* 18 U.S.C. § 3500(b); *United States v. Gatto*, 533 F.2d 264, 265 (5th Cir. 1976) ("A motion for Jencks Act material is appropriate only after the witness has testified at trial.").

## II.  MOTION TO PRECLUDE HEARSAY STATEMENTS OF DECEASED DECLARANT AND DEFENDANT (Doc. 52)

The Government moves to preclude hearsay evidence and testimony from third parties relating to advice Williams allegedly received from his now-deceased accountant, Carl Rang, and whether Williams relied on such advice. (Doc. 52 at 1). Specifically, the Government seeks to preclude testimony on these subjects from Williams's wife Kimberly Williams ("Mrs. Williams") and

---

[1] The Eleventh Circuit has adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981. *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).

daughter Ashley Ravenscroft. (*Id.* at 2–4). Williams opposes the motion. (Doc. 58)

Hearsay is any out-of-court statement offered to prove the truth of the matter asserted. *See* Fed. R. Evid. 801(c); *United States v. Cruz*, 805 F.2d 1464, 1477–78 (11th Cir. 1986) (quoting *Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d 250, 262 (5th Cir. 1980)). Hearsay is inadmissible unless an exception applies. Fed. R. Evid. 802. Statements offered to show the effect on the listener are admissible non hearsay because they aren't offered for their truth. *See Cruz*, 805 F.2d at 1478. Additionally, only witnesses who have personal knowledge of the subject matter of an event are competent to testify about what was said or done during the event.

Both the Government and Williams rely on *United States v. Bishop*, 291 F.3d 1100 (9th Cir. 2002), to support of their respective positions. In that criminal tax evasion case, the Ninth Circuit held it was harmless error to exclude as hearsay: (1) defendant Cardenaz's testimony about tax advice he claimed to have received from a deceased accountant and relied on because the advice was introduced for its effect on the listener and, therefore, not hearsay, *id.* at 1105, 1111; and (2) defendant Bishop's wife's testimony about tax advice an accountant gave her and her husband because the advice was "circumstantial evidence" of "Bishop's state of mind" and, therefore, admissible under a hearsay exception, *id.* at 1112 (citing Fed. R. Evid. 803(3)).

Here, Mrs. Williams and Ravenscroft both submitted multiple affidavits in which they detail specific tax advice Rang gave to Williams and state that Williams relied on that advice. (Doc. 52, Ex. 1 ¶¶ 7–9; Ex. 2 ¶¶ 4(f)–(h); Ex. 3 ¶¶ 9–11; Ex. 4 ¶¶ 4(h)–(j)). The affidavits don't state how the affiants learned this information. If Mrs. Williams and Ravenscroft heard about the conversations from either Williams or Rang, their testimony would be inadmissible hearsay. *See Bishop*, 291 F.3d at 1110–11 (affirming exclusion of witness testimony about: (1) tax advice the defendants told the witness they received from a deceased accountant and (2) tax advice the deceased accountant told the witness he gave to the defendants). On the other hand, if Mrs. Williams and Ravenscroft were personally present for conversations during which Rang advised Williams on his business's taxes, (see Doc. 58 at 8), they would have personal knowledge of the event(s) and would be competent to testify as to what they heard. Such testimony wouldn't be hearsay because it would be admitted only to prove what effect advice given by Rang, an accountant and tax advisor, may have had on Williams's thinking and actions. *See Cruz*, 805 F.2d at 1478. However, the trier of fact may not consider Rang's advice for its truth or accuracy. Nor may Mrs. Williams or Ravenscroft testify regarding what effect Rang's advice may have had on Williams's thinking or actions because neither witness is competent to offer testimony on that subject.

6

For his part, if he chooses to testify, Williams may state that Rang gave him tax advice and may describe how and why he relied on the advice. Williams's testimony wouldn't be hearsay because it would be admitted only for evaluating what, if any, effect Rang's advice may have had on the listener, Williams. See *id*. Again, however, the trier of fact will not be allowed to consider testimony about Rang's advice for the truth or accuracy of such advice.

"Whenever a district court admits a statement for one purpose but not another, it must, 'on timely request, [] restrict the evidence to its proper scope and instruct the jury accordingly.'" *United States v. Elysee*, 993 F.3d 1309, 1342 (11th Cir. 2021) (alternation in original) (quoting Fed. R. Evid. 105). Because the testimony regarding Rang's tax advice is admissible only for its effect on Williams and not for its truth, the Court will, upon request of counsel, instruct the jury to consider the tax advice only for its effect on Williams and not for its truth. *See, e.g.*, *United States v. Trujillo*, 561 F. App'x 840, 842 (11th Cir. 2014) (affirming district court's decision to admit newspaper articles for their effect on the defendant and instruct the jury not to consider the articles for their truth).

Subject to the above limitations, the Court **GRANTS** the Government's motion.

## III. MOTION TO PRECLUDE ARGUMENT THAT PROVING WILLFULNESS REQUIRES PROOF OF KNOWLEDGE OF POTENTIAL FOR CRIMINAL PROSECUTION OR SANCTIONS (Doc. 53)

The Government moves to preclude Williams from arguing that the element of willfulness—the required *mens rea* for the charged offenses—requires the Government to prove that Williams knew his alleged actions specifically violated criminal law and could result in a criminal prosecution. (Doc. 53 at 1). Williams opposes the motion. (Doc. 57). The Court agrees with the Government's argument and **GRANTS** the motion. Williams may not argue that the Government must prove he knew his alleged actions could result in criminal prosecution.

Williams is charged in nine counts with *willfully* failing to truthfully account for and pay over taxes in violation of 26 U.S.C. § 7202. (*See* Doc. 1, Indictment at 3–4). In the context of the Internal Revenue Code, "willfully" "simply means a voluntary, intentional violation of a known legal duty." *United States v. Pomponio*, 429 U.S. 10, 12 (1976); *see also United States v. Houser*, 754 F.3d 1335, 1350 (11th Cir. 2014) (applying *Pomponio's* definition of willfully to § 7202). Allowing Williams to argue that proving "willfulness" requires more than proving "a voluntary, intentional violation of a known legal duty" is counter to binding precedent. *See Pomponio*, 429 U.S. at 12 ("willfully" doesn't "require[] proof of any motive other than an intentional violation of a known legal duty").

8

This ruling doesn't preclude Williams from arguing that his alleged failure to truthfully account for and pay taxes was due to his good faith reliance on the advice of his accountant.

## IV.   MOTION TO PRECLUDE EVIDENCE AND ARGUMENT RE SELECTIVE PROSECUTION (DOC. 54)

The Government moves to preclude Williams from soliciting testimony, presenting evidence, or arguing that other third-party individuals haven't been criminally charged after allegedly engaging in conduct like that which he is charged with. (Doc. 54 at 1). Williams opposes the Government's motion but states he doesn't intend to "(1) introduce[e] 'stories about third parties who had tax problems but were not charged criminally' (2) or argu[e] this case involves 'selective prosecution.'" (Doc. 56 at 6). Instead, Williams clarifies that he intends to argue only that the IRS previously treated his matter administratively, not criminally. (*Id.* at 2–6).

A "selective prosecution defense is an issue for the court to decide, not an issue for the jury." *United States v. Jones*, 52 F.3d 924, 927 (11th Cir. 1995). Evidence of how other third-party tax cases were handled or treated would therefore be improper and irrelevant. Williams's counsel represents he doesn't intend to offer evidence about or argue that Williams should be acquitted because others engaged in similar alleged conduct but weren't prosecuted. Rather, he seeks only to present evidence or argument that the IRS previously

treated Williams's tax matter administratively, not criminally, and that Williams wasn't previously prosecuted when he engaged in conduct like that now alleged against him. Such proof is relevant to Williams's state of mind and whether he acted willfully.

Subject to this limitation, the Court **GRANTS** the Government's motion.

## V.   MOTION TO PRECLUDE IMPEACHMENT WITH PRIOR ASSERTION OF FIFTH AMENDMENT PRIVILEGE (DOC. 55)

Williams moves to preclude the Government from impeaching Mrs. Williams and Ravenscroft with their prior assertions of the Fifth Amendment privilege before the grand jury investigating Williams. (Doc. 55 at 3). The Government opposes the motion. (Doc. 62). The Court **GRANTS** the motion, subject to the below qualifications.

A witness's credibility may be impeached with a prior inconsistent statement, provided that the court is "persuaded that the statements are indeed inconsistent." *United States v. Hale*, 422 U.S. 171, 176 (1975). Generally, however, a witness's decision to invoke their Fifth Amendment privilege against self-incrimination before a grand jury isn't proper impeachment evidence because silence isn't necessarily inconsistent with trial testimony. *See Grunewald v. United States*, 353 U.S. 391, 424 (1957) (finding trial court's decision to allow cross-examination of the defendant about his decision to invoke the Fifth Amendment during a grand jury appearance was reversible

10

error); *United States v. Rubin*, 559 F.2d 975, 983 (5th Cir. 1977) ("A defense witness's prior refusal to supply testimony to a grand jury before which he had a reasonable belief that he might be a defendant himself has no proper significance as impeachment evidence."), *vacated on other grounds*, 439 U.S. 810 (1978).

On the other hand, if a witness testifies falsely at trial, the witness may be impeached with otherwise inadmissible evidence. *See, e.g.*, *United States v. Havens,* 446 U.S. 620, 627–28 (1980) (holding that, in certain circumstances, a defendant can be impeached by illegally obtained and otherwise inadmissible evidence). Several circuits, including the Eleventh Circuit, have held that when a witness's trial testimony is inconsistent with silence before the grand jury, the witness can be impeached with evidence of a prior invocation of the Fifth Amendment. *See, e.g.*, *United States v. Knight*, 867 F.2d 1285, 1290 (11th Cir. 1989) (approving impeachment of government witness with prior invocation of Fifth Amendment when witness falsely testified she hadn't invoked the Fifth Amendment before the grand jury); *United States v. Seltzer*, 794 F.2d 1114, 1122 (6th Cir. 1986) (holding the defendant "opened the door" to impeachment with prior invocation of Fifth Amendment by "attempt[ing] to paint a picture of him[self] as a willing, cooperative grand jury witness"); *United States v. Barber*, 668 F.2d 778, 785 (4th Cir. 1982) (holding the defendant "opened the door" to impeachment with prior invocation of Fifth Amendment by testifying he

would've discussed the matters under investigation with the prosecutor "had he been afforded the opportunity").

Mrs. Williams and Ravenscroft may not be impeached with their prior assertion of the Fifth Amendment privilege unless they "open the door" by testifying that: (1) they didn't invoke the Fifth Amendment before the grand jury, *Knight*, 867 F.2d at 1290; (2) they were willing and cooperative during the grand jury investigation, *Seltzer*, 794 F.2d at 1122; or (3) they didn't have the opportunity to share information with the prosecution or grand jury, *Barber*, 668 F.2d at 785.

## VI. OMNIBUS MOTION TO PRECLUDE EVIDENCE AND ARGUMENT AND TO STRIKE (Doc. 60)

Williams moves to preclude several broad categories of evidence and argument and to strike related portions of the Indictment. (Doc. 60). The Government opposes the omnibus motion. (Doc. 63). The omnibus motion is **GRANTED IN PART**, **DENIED IN PART**, and **DEFERRED IN PART**. Williams's separate requests are discussed below.

### A. Payments to Mrs. Williams

Williams moves to preclude the Government from introducing evidence of payments made from Williams's company, First Coast Exteriors, to Mrs. Williams or arguing that these payments were an improper diversion of funds because the Government can't show Mrs. Williams didn't work at First Coast.

(Doc. 60 at 6–8). Williams argues that the Government's evidence that Mrs. Williams didn't work at First Coast—two affidavits of former First Coast employees—is unreliable because the affiants didn't primarily work in the office and had no knowledge of Mrs. Williams's role. (*Id.*). The Government responds that its witnesses will testify Mrs. Williams had either no job or a no-show job at First Coast and that the payments to Mrs. Williams are relevant to prove Williams's motive (greed). (Doc. 63 at 6–7). The Government points out that Mrs. Williams was paid more than $100,000 each year between 2015 and 2018—more than double the salary of most other employees. (*Id.* at 3; *compare* Doc. 60-1 at 9 (spousal payments), *with id.* at 21–24 (payments to other employees)). In fact, from 2015 to 2018, she was paid $40,000 more than the second highest paid employee in the company.

Evidence is relevant if it has any tendency to make a fact of consequence more or less probable than it would be without the evidence. Fed. R. Evid. 401. Relevant evidence is generally admissible. *Id.* 402. Whether Mrs. Williams held a legitimate job at First Coast is a relevant and legitimate issue of fact for the jury to decide. Evidence that employees who worked at First Coast during the relevant periods charged in the Indictment never saw Mrs. Williams at work or were never aware of any role she may have had at the company, but that she nevertheless received large payments, is probative of whether the defendant improperly diverted corporate funds to his wife. In turn, such evidence is

relevant to prove the defendant's motive for allegedly failing to pay payroll taxes to the IRS. *See* Fed. R. Evid. 402(b)(2). The evidence may also tend to show that the defendant had the ability (wherewithal) to make timely required tax payments. Both issues require further factual development and foundational evidence establishing that the testimony of the witnesses the Government intends to call is based on their personal knowledge and first-hand observations at relevant times. The Court **DEFERS** a definitive ruling on this motion, subject to the presentation of such evidence.

### B.    Personal Real Estate Events

Williams seeks to preclude the Government from offering evidence of two personal and marital real estate events, arguing such transactions aren't relevant to the alleged failure to pay the corporate tax debt owed by a First Coast. (Doc. 60 at 9–10, 23–25). The Government argues evidence of these transactions is relevant to prove Williams had access to sufficient funds to cover the payroll taxes owed to the IRS. (Doc. 63 at 5, 13–15).

In certain circumstances, a "person required to collect, truthfully account for, and pay over any tax imposed by [the Internal Revenue Code] who willfully fails to collect such tax, or truthfully account for and pay over such tax" can be personally liable for a corporation's unpaid payroll taxes. *Slodov v. United States*, 436 U.S. 238, 240–41 (1978) (quoting 26 U.S.C. § 6672). Williams contends that *Slodov* held there is no duty for the responsible corporate officer

14

to use personal assets to pay corporate payroll taxes. (Doc. 60 at 23–25 (quoting *Slodov*, 436 U.S. at 251, 253–54)). But *Slodov* decided whether an individual who took over control of a business was personally liable for a payroll tax debt which accrued *before* he assumed control. *Slodov*, 436 U.S. at 240–41. It is undisputed that First Coast accrued its payroll tax debt while Williams was the responsible officer, so *Slodov* doesn't dictate the outcome here.

Additionally, the Government contends the First Coast records it has reviewed demonstrate that Williams used corporate profits to pay his mortgage. (*See* Doc. 63 at 5). Williams disputes that these records show diversion of corporate funds. (Doc. 66 at 7 n.11). If there is competent evidence tending to show that Williams diverted company funds to pay his mortgage, such evidence would be relevant to undercut a defense that required taxes weren't paid because of insufficient funds. *See, e.g.*, *United States v. DeMuro*, 677 F.3d 550, 558 (3d Cir. 2012) (noting that "evidence of personal spending can be relevant evidence in criminal tax actions" and holding evidence of "lavish personal spending" was relevant when the defendants were diverting corporate funds to personal taxes and argued they were genuinely trying to pay off their taxes); *United States v. Blanchard*, 618 F.3d 562, 569, 570 n.4 (6th Cir. 2010) (holding that when a defendant advances a defense that he was unable to pay payroll taxes, "evidence regarding [the] defendant's ability to pay taxes is pertinent to whether an offense has been committed under § 7202, since it bears on the

willfulness of the defendant's failure to pay over withheld tax to the government").

As with the last issue, this issue requires further factual development and foundational evidence that the records establish First Coast assets were diverted to pay Williams's personal expenses. The Court **DEFERS** a definitive ruling on this motion subject to the presentation of such evidence.

### C.    Personal Gambling Activities

Williams moves to preclude the Government from presenting evidence of his and his wife's gambling activity on the ground that this personal activity isn't relevant, (Doc. 60 at 10–15), and is prejudicial, (*id.* at 12). The Government responds that evidence of the Williamses' gambling activity is relevant to prove the defendant had access to sufficient funds to cover the payroll taxes owed to the IRS. (Doc. 63 at 5, 13–15). The Government proffers that First Coast business records establish that Williams made direct payments to casinos with corporate funds. (*Id.* at 5 & n.2; Doc. 68 at 4–5). Williams disputes this contention, arguing the payments reflected in the records: (1) were made after First Coast closed; (2) were made 32–38 months after the Count 1 date and 8–12 months after the Count 9 date; (3) were for modest amounts; and (4) involved residual corporate funds personally belonging to Williams. (Doc. 79 at 3–4).

Incorporating the analysis from the previous sections, evidence that corporate funds were used to finance the Williamses' gambling activity at a time

when he owed outstanding tax payments is highly relevant to the defendant's ability to timely pay business taxes that were owed. Such evidence is likewise more probative than prejudicial. Fed. R. Evid. 403; *see, e.g.*, *Blanchard*, 618 F.3d at 569, 570 n.4 (holding that evidence of the defendant's gambling activity is probative of ability to pay, relevant to willfulness under § 7202, and more probative than prejudicial when defense counsel had the opportunity to address the activity).

Subject to a foundational showing that the proffered business records tend to prove what the Government contends, Williams's motion to preclude evidence related to his and his wife's gambling activity is **DENIED**.

### D.   Uncharged Tax Issues at Prior Business

Williams next seeks to preclude evidence of tax issues at Williams's prior company, W.W. Contractors, and to strike related allegations from the Indictment because they aren't relevant as uncharged allegations from a separate company and are outside the statute of limitations. (Doc. 60 at 15–18). The Government argues evidence of these prior, uncharged payroll tax issues at W.W. Contractors is relevant to show willfulness and not barred by the statute of limitations. (Doc. 63 at 2, 7–11, 15–17).

As discussed previously, "willfully" in § 7202 "means a voluntary, intentional violation of a known legal duty." *Pomponio*, 429 U.S. at 12; *Houser*, 754 F.3d at 1350. Furthermore, evidence of "[a] defendant's past taxpaying

record is admissible to prove willfulness circumstantially." *United States v. Daraio*, 445 F.3d 253, 264 (3d Cir. 2006) (alternation in original) (quoting *United States v. Ringwalt*, 213 F. Supp. 2d 499, 506 (E.D. Pa. 2002) (quoting *United States v. Bok*, 156 F.3d 157, 165 (2d Cir. 1998))).

The Government proffers evidence that will prove that W.W. Contractors, which was operated by Williams, filed Form 941 returns with the IRS and, at times, failed to make timely payroll tax payments to the IRS. (Doc. 63 at 2). The Government also proffers evidence that the IRS sent W.W. Contractors delinquency notices. This evidence is relevant to prove that Williams knew he had a duty to truthfully account for and pay taxes to the IRS. And contrary to Williams's objection, the evidence isn't barred by the statute of limitations. *See United States v. Ashdown*, 509 F.2d 793, 798 (5th Cir. 1975) ("The statute of limitations is a defense to prosecution, not a rule of evidence."). However, evidence of uncharged tax violations will only be admitted for the limited purpose of proving Williams's knowledge of this duty. Williams's motion to preclude evidence of prior tax delinquencies at W.W. Contractors is **GRANTED IN PART** and **DENIED IN PART**.

Williams also moves to strike the allegations of tax issues at W.W. Contractors from the Indictment. (Doc. 60 at 16). The Court may, "[u]pon the defendant's motion, . . . strike surplusage from the indictment." Fed. R. Crim. P. 7(d). A Rule 7(d) motion "should not be granted 'unless it is clear that the

allegations are not relevant to the charge and are inflammatory and prejudicial.
. . . [T]his is a most "exacting standard."'" *United States v. Awan*, 966 F.2d 1415,
1426 (11th Cir. 1992) (quoting *United States v. Huppert*, 917 F.2d 507, 511
(11th Cir. 1990) (quoting 1 Charles A. Wright, Federal Practice and Procedure
§ 127 at 424–29 (1982))).

As discussed above, the evidence regarding prior alleged tax
delinquencies at W.W. Contractors appears relevant to the issue of the
Williams's knowledge of his tax obligations and whether he acted willfully in
this case. These prior tax delinquency allegations are neither inflammatory nor
prejudicial, given that this case alleges a failure to pay taxes. Williams's motion
to strike allegations from the Indictment relating to prior tax issues at W.W.
Contractors is **DENIED**.

### E.      Uncharged Tax Issues at First Coast

Williams seeks to preclude evidence of uncharged tax issues at First
Coast and to strike these allegations from the Indictment because they aren't
relevant and are outside the statute of limitations. (Doc. 60 at 20–21). The
Government responds that evidence of prior, uncharged payroll tax issues at
First Coast is relevant to show willfulness and isn't barred by the statute of
limitations. (Doc. 63 at 3–4, 7–11, 15–17).

The Court incorporates its analysis of Williams's motion to preclude
evidence and strike allegations of uncharged tax issues at W.W. Contractors.

19

Evidence proving that Williams knew of uncharged tax issues at First Coast is relevant to show he knew he had a duty to truthfully account for and pay over taxes to the IRS and isn't barred by the statute of limitations. *See Ashdown*, 509 F.2d at 798. Subject to the limitation that the evidence may be offered only as proof of willfulness, the motion to preclude evidence of uncharged tax issues at First Coast and to strike related allegations from the Indictment is **DENIED**.[2]

### F.    Testimony of Paul Lui, CPA

#### 1.    Advice for W.W. Contractors

Williams moves to preclude CPA Paul Lui from testifying he informed Williams of the duty to pay the IRS payroll taxes for W.W. Contractors. (Doc. 60 at 18–20). Williams argues such testimony is cumulative and will waste time since he will stipulate he knew he had a duty to pay taxes. (*Id.*; Doc. 66 at 2–3). The Government prefers to offer Lui's testimony rather than rely on Williams's offer to stipulate. (Doc. 63 at 2, 4, 11–13; 68 at 1–4).

A defendant's past taxpaying record is admissible to prove knowledge of a legal duty to truthfully account for and pay over taxes. *See Daraio*, 445 F.3d

---

[2] Williams also moves to generally restrict the proof permitted at trial to the dates charged in the Indictment, *i.e.,* the fourth quarter of 2016 to the fourth quarter of 2018. (Doc. 60 at 3 n.4). As previously discussed, evidence from before the period charged in the Indictment is admissible on the issue of willfulness. Williams's Motion to restrict the proof to the dates charged in the Indictment is **DENIED**.

at 264. Past tax advice from a CPA on how to account for and pay taxes is likewise relevant to prove a defendant's knowledge of the duty.

Williams makes much of the fact that Lui didn't do any work for First Coast.[3] (*See* Doc. 60 at 18–20; 66 at 2–3; 79 at 4). Although true, this is also beside the point. Lui's testimony is relevant because it tends to prove Williams's preexisting knowledge of his duty to timely pay business taxes. Regarding the manner of proof, the Government correctly points out that it isn't "obliged to accept [Williams's] stipulation" and "is entitled to prove its case free from [the] option to stipulate the evidence away." *United States v. Langford*, 647 F.3d 1309, 1324 (11th Cir. 2011) (quoting *Old Chief v. United States*, 519 U.S. 172, 189 (1997); *see also Old Chief*, 519 U.S. at 186–87 ("[A] criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it.").

Williams's motion to preclude Lui's testimony is **DENIED**.

### 2.   Offers to Assist First Coast

Williams also moves to preclude evidence that Williams and/or First Coast declined or was unable to hire The Nichols Group, P.A., an accounting firm that employed Lui as an accountant. (Doc. 60 at 21–22). The Government maintains this evidence is relevant to show Williams knew he had a duty to pay

---

[3] The Government contends Lui made multiple attempts to offer his services to First Coast when he learned of its payroll tax issues. (Doc. 63 at 4).

21

taxes. (Doc. 63 at 4). The parties disagree whether Lui communicated directly with Williams about First Coast's tax issues. (*Compare id.*, *with* Doc. 66 at 3–4).

If Lui and Williams communicated about First Coast's payroll tax issues, Lui's attempts to offer his and his employer's services to Williams would be relevant to establish Williams's knowledge of his duty to truthfully account for and timely pay the tax liability at issue *in this case*. While this is a slight variation of the offer of proof that supported Liu's testimony relating to W.W. Contractors, the proffered evidence is relevant because it is more recent and more directly corresponds to the charged crimes. It is therefore not cumulative. Williams's motion to preclude Lui's testimony that he offered to assist Williams and/or First Coast is **DENIED**.

**IT IS SO ORDERED** in Jacksonville, Florida this 1st day of September 2023.

_Larry A. Burns_
LARRY A. BURNS
United States District Judge

Copies:

Counsel of record